IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KELLY BEARD, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | NO. 08-749 |
| | : | |
| v. | : | |
| | : | |
| GREATER PHILADELPHIA URBAN | : | |
| AFFAIRS COALITION, et al., | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM AND ORDER**

**JOEL H. SLOMSKY, J.**                                                                 **February 6, 2009**

Presently before the Court is the Motion to Dismiss the Amended Complaint (Docket No. 12) filed by Defendants Greater Philadelphia Urban Affairs Coalition ("GPUAC"); Town Watch Integrated Services ("Town Watch"); and Anthony Murphy ("Murphy"). For the reasons set forth below, the Motion will be granted in part and denied in part.

**I.      Facts and Procedural History[1]**

Plaintiff is an African-American female who was employed by Defendant GPUAC as a Weed and Seed Coordinator for the North Philadelphia Weed and Seed Project ("Weed and Seed").[2] Weed

---

[1] The facts presented are alleged in the Amended Complaint and are viewed in the light most favorable to the Plaintiff.

[2] In addition to overseeing the Weed and Seed Project, Defendant GPUAC acts as the fiscal agent for various non-profit organizations, including Defendant Town Watch. Plaintiff pleads in the alternative that if she was not an employee of Defendant GPUAC, she was an employee of Defendant Town Watch.

1

and Seed is a federally funded non-profit organization designed to prevent crime and revitalize inner city neighborhoods by providing social, economic and educational opportunities.

While employed as a Weed and Seed Coordinator, Plaintiff had a 90 day performance review in which her performance rating was "outstanding." Soon after this review, Plaintiff began voicing her concerns over the lawfulness of Weed and Seed's allotment of government funds. In particular, Plaintiff questioned payments made to Weed and Seed Program Site Coordinator, Donna Griffin ("Griffin"), in excess of her salary. Plaintiff also voiced concerns that certain organizations were not provided funds as represented in grant budgets submitted to the federal funding agency.

Plaintiff originally voiced these concerns to the Weed and Seed Personnel Committee and the North Philadelphia Safe Haven Committee. As a result of Plaintiff's concerns, the Weed and Seed Personnel Committee conducted an investigation into the pertinent Defendants' financial and accounting practices around March 2006. Following the investigation, the Weed and Seed Committee had a meeting with Police Inspector Carl Holmes to review proper financial and accounting practices. Defendant Murphy, Executive Director of Defendant Town Watch, and Griffin were required to attend the meeting. Plaintiff was not present at the meeting but Police Inspector Holmes scheduled a meeting with her for May 10, 2006.

On April 18, 2006, Defendant Murphy and Griffin called Plaintiff into a meeting. Defendant Murphy and Griffin, angry that Plaintiff instigated the investigation, instructed Plaintiff that in the future she was to report only to them. Plaintiff asked if she could discuss this instruction– a departure from her normal practice– with the Steering and/or Personnel Committees. Defendant Murphy denied the request.

That same day, Plaintiff received an email regarding Weed and Seed from Defendant Murphy. Plaintiff forwarded the email to a member of the Steering Committee. The following day, Plaintiff received a call from Griffin who stated that Plaintiff was indefinitely suspended for insubordination. Plaintiff alleges that neither Defendant Murphy nor Griffin possessed the authority to suspend her.

On April 21, 2006, Defendant Murphy and Griffin summoned Plaintiff to another meeting, where they again instructed her that she was to report only to them. Two days later, on April 23, 2006, Plaintiff received an email from Defendant Murphy with a racially and sexually derogatory attachment. This attachment appeared to be an old advertisement for slaves, which referred to female slaves as wenches. On April 30, 2006, Plaintiff submitted a written complaint to Police Inspector Holmes regarding the derogatory email.

On May 2, 2006, Defendant Murphy and Griffin again called Plaintiff into a meeting. She was presented with a letter allegedly backdated to April 24, 2006 from Defendant Murphy and Griffin reprimanding her for prior insubordination. Plaintiff alleges that Defendant Murphy and Griffin fabricated this letter to justify her termination. Defendant Murphy then informed Plaintiff that her employment was terminated unless she cancelled her May 10, 2006 meeting with Police Inspector Holmes to discuss the alleged fiscal improprieties. Plaintiff informed Defendant Murphy that she did not request the meeting and could not cancel it.

On May 3, 2006, Plaintiff filed a written complaint with Defendant GPUAC challenging her termination. On June 15, 2006, Defendant GPUAC informed Plaintiff that it was upholding the decision of Defendant Murphy and Griffin to terminate her.

In response, Plaintiff filed a timely charge with the Equal Employment Opportunities

Commission ("EEOC") alleging retaliation and discrimination on the basis of race and gender against Defendants GPUAC, Town Watch, Murphy and the City of Philadelphia. Plaintiff cross-filed this charge with the Pennsylvania Human Relations Commission.

Plaintiff received a Right to Sue from the EEOC and filed her Complaint on February 15, 2008 (Docket No. 1). Plaintiff filed an Amended Complaint on May 9, 2008 (Docket No. 10). The Amended Complaint alleges claims for: (1) retaliation, discrimination and harassment under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., in Count I; (2) retaliation, discrimination and harassment under the Pennsylvania Human Relations Act (PHRA), 43 P.S. § 951 et seq., in Count II; (3) retaliation plus under Title VII in Count VI; (4) retaliation plus under the PHRA in Count VII; and (5) wrongful termination in Count VIII.[3] In response, Defendants filed this Motion to Dismiss the Amended Complaint for failure to state a claim.

## II.  Discussion

### A.  Motion to Dismiss

#### 1.  Standard

Defendants have moved to dismiss several counts of Plaintiff's Amended Complaint for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). In deciding a motion to dismiss pursuant to Rule 12(b)(6), a court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under a reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotations omitted) (reasoning that this statement of Rule 12(b)(6) standard remains acceptable following U.S. Supreme Court's

---

[3] Plaintiff withdrew Counts III to V in her Amended Complaint (Docket No. 10).

4

decision in Bell Atlantic Corporation v. Twombley, 550 U.S. 544 (2007)). To withstand a motion to dismiss under Rule 12(b)(6), "factual allegations must be enough to raise a right to relief above the speculative level." Id. at 234. This standard "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." Id. However, the Court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." Hunt v. United States Tobacco Co., 538 F.3d 217, 227 (3d Cir. 2008) (internal quotation omitted).

### B. Counts I and II

Count I of Plaintiff's Amended Complaint alleges violations of Title VII, while Count II advances the same allegations in support of the Plaintiff's state law claims under the PHRA.[4] In support of their Motion to Dismiss Counts I and II of the Amended Complaint, Defendants argue that Plaintiff has failed to allege a federal or state law claim for retaliation.[5]

Pursuant to Title VII, "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has *opposed* any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or

---

[4] The Third Circuit has repeatedly noted that "[c]laims under the PHRA are interpreted coextensively with Title VII Claims." Atkinson v. Lafayette College, 460 F.3d 447, 454 at n.6 (3d Cir. 2006). Accordingly, unless otherwise noted, the Court's holdings with regard to Plaintiff's Title VII claims will also apply to Plaintiff's claims under the PHRA.

[5] It appears that Plaintiff, in both Counts I and II of her Amended Complaint, has joined three separate claims for (1) discrimination under a disparate treatment theory, (2) retaliation, and (3) hostile work environment harassment. Generally, these are three separate claims, requiring proof of different prima facie elements and should be pled separately. Defendants' Motion only challenges Counts I and II to the extent that they raise claims for retaliation. Accordingly, this Memorandum will only address the merits of Plaintiff's retaliation claims under Title VII and the PHRA.

5

participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. 2000e-3(a) (emphasis added). Similarly, the PHRA makes it unlawful "for any person, employer . . . to discriminate in any manner against any individual because such individual has *opposed* any practice forbidden by this act." 43 P.S. § 955(d) (emphasis added).

To survive Defendants' Motion to Dismiss federal and state retaliation claims, the Amended Complaint must contain facts sufficient to establish a prima facie case. While the factual requirements for a prima facie retaliation claim may differ on a case by case basis, the Third Circuit requires a plaintiff to demonstrate that: (1) she engaged in a protected activity; (2) the employer took adverse action against her; and (3) a causal link exists between the protected activity and the employer's adverse action. See Kachmar v. Sungard Data Systems, Inc., 109 F.3d 173, 177 (3d Cir. 1997). Defendants appear to argue that Plaintiff has failed to allege facts sufficient to support the first and third requirements of a retaliation claim. The Court does not agree.

First, Defendants argue that Plaintiff fails to aver that she engaged in a protected activity. Pursuant to both the federal and state statutes, a plaintiff engages in a protected activity if he or she opposes any practice forbidden by the act. See Robinson v. Southeastern Pa. Transp. Auth., 982 F.2d 892, 897 (3d Cir. 1993) (upholding district court's finding that letter to supervisor complaining of management's blatant racism constitutes opposition). Opposition to discrimination can take the form of "informal protests of discriminatory employment practices, including making complaints to management." Curay-Cramer v. Ursuline Acad. Of Wilmington, Del., Inc. 450 F.3d 130, 135 (3d Cir. 2006). To determine if Plaintiff sufficiently opposed discrimination, the Court looks to "the message being conveyed rather than the means of conveyance." Id. The employee also must have an objectively reasonable good faith belief that the activity being opposed is unlawful under Title

6

VII. See Clark County v. Breeden, 532 U.S. 268, 271 (2001).

Plaintiff alleges in the Amended Complaint that she received the racially and sexually derogatory email attachment on April 23, 2006. On April 30, 2006, Plaintiff submitted a written complaint regarding the email to Police Inspector Holmes. The written complaint to Inspector Holmes related solely to the derogatory email. Consequently, the conveyance of Plaintiff's complaint to Police Inspector Holmes could fall within the scope of "opposition." Plaintiff's quick response complaining of the derogatory email evinces an objectively reasonable good faith belief that the email violated federal and state laws.

Second, Defendants argue that even if Plaintiff did engage in a protected activity, she fails to show any causal link between this participation and her termination. Defendants focus on the majority of the averments contained in Plaintiff's Amended Complaint alleging that she was treated unfairly because she opposed Defendants' accounting practices. However, Plaintiff alleges that she submitted a formal complaint to Police Inspector Holmes after receiving the derogatory email. Two days later, she was called into a meeting with Defendant Murphy and was told that she was being terminated for insubordination. The next day, she filed a written complaint with Defendant GPUAC. Defendant GPUAC upheld the decision. While Defendants may be correct that the majority of Plaintiff's averments relate to her opposition to the accounting practices, there are still sufficient allegations in the Amended Complaint to raise the inference that Plaintiff was terminated because she complained about the derogatory email. Defendants are in effect asking the Court to be the trier of fact and determine the actual cause of Plaintiff's termination at the motion to dismiss stage of the proceeding. This standard does not apply in considering a motion to dismiss. Consequently, Defendants' Motion to Dismiss is denied as to Plaintiff's claims in Count I and Count II for

retaliation.[6]

### C.  Counts VI and VII Under Retaliation Plus Theory

In Counts VI and VII of the Amended Complaint, Plaintiff brings claims for "Attempted Whistleblowing Plus Title VII [and PHRA] Protected Categories." The crux of Plaintiff's claims in Counts VI and VII appear to be that "the decision to terminate her was motivated *both* by her expressed concerns about financial issues and by discriminatory and retaliatory bias."[7] See Pl. Memorandum of Law in Opposition to Defendants' Motion to Dismiss at 16 (emphasis added). As stated above, Plaintiff has adequately alleged facts in support of her state and federal retaliation claims. It appears to this Court, however, that the assertions in Counts VI and VII are duplicative of Counts I and II. Nevertheless, because Plaintiff has adequately alleged claims for relief in Counts I and II, the Court will not dismiss Counts VI and VII at this juncture. Instead, the Court will afford Plaintiff the opportunity to pursue these Counts with the caveat that she must demonstrate, in a future proceeding, that Counts VI and VII allege claims distinct from those asserted in Counts I and II.

### D.  Count XIII for Wrongful Termination

Defendants next move to dismiss Plaintiff's claim for wrongful termination. It is well

---

[6] Defendant Murphy contends that as an individual, he is not subject to liability under Title VII. The Court agrees with this assertion and the Motion to Dismiss Count I as to Defendant Murphy is granted. See, Sheridan v. E.I. DuPont de Nemours and Co., 100 F.3d 1061, 1077 (3d Cir. 1996). Plaintiff correctly asserts, however, that several provisions of the PHRA apply to individuals. Thus, at this stage of the proceeding, Defendant Murphy may still be subject to liability under Count II.

[7] In addition to arguing that Counts VI and VII duplicate Counts I and II, Defendants also interpret these Counts as attempting to allege claims under state and federal whistleblowing laws. It appears from the face of the Amended Complaint that Plaintiff is not making such claims. To the extent that Plaintiff is attempting to advance such a theory, however, there are no facts alleged to support these claims.

established under Pennsylvania law that an at-will employee may be terminated for good cause, bad cause, or no cause at all. See Yetter v. Ward Trucking Corp., 585 A.2d 1022, 1026 (Pa. Super 1991). "The employer's privilege to dismiss an employee with or without cause is not absolute, however, and may be qualified by the dictates of public policy." Shick v. Shiley, 716 A.2d 1231, 1234 (Pa. 1998). The public policies which justify an exception to this general rule include legislative and judicial pronouncements, constitutional freedoms, regulatory restrictions and social norms and trends. Id. at 1237.

Here, Plaintiff alleges that she was terminated in part for reporting the misuse of federally granted funds allocated to a non-profit agency for the purposes of serving underprivileged youth. Such allegations, if true, could violate various federal grant and criminal statutes. Moreover, in voicing her concerns over this potential impropriety, Plaintiff was exercising her rights under the First Amendment. Consequently, Plaintiff's allegations raise sufficient public policy concerns which could support a claim for wrongful termination at the motion to dismiss stage.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KELLY BEARD, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | NO. 08-749 |
| | : | |
| v. | : | |
| | : | |
| GREATER PHILADELPHIA URBAN AFFAIRS COALITION, et al., | : | |
| | : | |
| Defendants. | : | |

## ORDER

AND NOW, this 6th day of February, 2009, upon consideration of the Motion to Dismiss the Amended Complaint (Docket No. 12), filed by Defendants Greater Philadelphia Urban Affairs Coalition, Town Watch Integrated Services and Anthony Murphy ("Murphy"); Plaintiff's response thereto (Docket No. 14); and Plaintiff's Amended Complaint (Docket No. 10), it is ORDERED as follows:

1. Defendants' Motion to Dismiss the Amended Complaint is GRANTED as follows: Defendant Murphy is dismissed as a Defendant in Count I only.

2. Defendants' Motion to Dismiss the Amended Complaint is DENIED in all other respects.

*Joel Slomsky*
JOEL H. SLOMSKY, J.